W. SHARP, Judge.
Ringhaver Equipment Company appeals from a judgment which held invalid its asserted mechanic’s lien claim against a 42-foot Supersport boat owned by Brooks. The trial judge relied upon stipulations of the parties in the record that Ringhaver was not in privity with Brooks when Rin-ghaver furnished the boat manufacturer (Whitehouse Marine Corporation) with the two diesel engines which were the source of the lien claim; and that when Brooks was notified of Ringhaver’s claim, he no longer owed Whitehouse any monies for the boat. We affirm.
The record discloses that Brooks contracted with Whitehouse Marine to buy a fishing boat for $168,750, which White-house would build and equip pursuant to Brooks’ specifications. Brooks specified an upgrade in engines for the boat: 2 caterpillar diesels. This increased the price of the boat by $15,000.
Whitehouse told Brooks it did not have sufficient credit with Ringhaver (the engine supplier) to obtain the specified caterpillar engines. Brooks then advanced Whitehouse $60,000 on the contract, so that it could buy the engines.
*842 Whitehouse entered into negotiations with Ringhaver to buy the engines. Ringhaver agreed to deliver the engines to Whitehouse if Whitehouse obtained letters of credit for the full purchase price, or if it paid 25% down and the balance within 10 days, with a personal guaranty from the owner of the corporation. Whitehouse elected the latter option. Ringhaver did not know the identity of the prospective purchaser from Whitehouse, nor did it make any effort to obtain that information until many weeks later.
Whitehouse paid Ringhaver $10,997.50, and took delivery of the engines, on February 3, 1988. However, Whitehouse never paid Ringhaver the balance owed of $31,-997.50. Whitehouse installed the diesels in the boat.
Because Whitehouse’s work was not progressing to Brooks’ satisfaction, he paid Whitehouse in full on March 25, 1988, and took delivery of the partially completed vessel. Whitehouse gave him a bill of sale and manufacturer’s statement of origin. Brooks also applied for and obtained a title for the boat on March 29, 1988. Brooks hired other subcontractors to complete construction of the boat.
On March 25, 1988, Ringhaver sought to file a notice of lien on the boat, with Bre-vard County, the Department of Natural Resources, Secretary of State of Florida, and the United States Coast Guard. However, the state returned the lien notice because the vessel had not then been titled.
On April 4, 1988, Ringhaver notified Whitehouse it was asserting a lien for the $32,992.50 balance due, and on May 6, 1988, it notified Brooks. Ringhaver eventually obtained a judgment against White-house, which was never satisfied, and the principal has long absconded. The parties stipulated that the first actual notice Brooks had that Whitehouse failed to pay Ringhaver in full for the engines was the May 6, 1988 letter. We are thus dealing in this case with two innocent parties, and the question is which of the two must bear the loss.
Section 713.60, Florida Statutes (1987), provides, for liens on vessels stemming from labor or materials and supplies used in their construction. Ringhaver’s lien clearly is encompassed in this provision.[1] However, such liens are limited by the further provisions of section 713.74 and 713.-75.
Section 713.74 applies to liens being imposed against owners who are in privity with the lienor. Ringhaver and Brooks were never in privity with one another. However, Ringhaver argues it was in privity with Whitehouse when the engines were delivered and when Whitehouse defaulted by failing to pay for them within ten days.
Although section 713.74 is somewhat ambiguous on the point of who is deemed to be an owner under the circumstances of this case, we think it is inapplicable to Brooks. It provides:
As against the owner of personal property upon which a lien is claimed under this part II, the lien shall be acquired by any person in privity with the owner by the performance of the labor or the furnishing of the materials. There shall be no lien upon personal property as against purchasers and creditors without notice unless the person claiming the lien is in possession of the property upon which the lien is claimed. The lien shall continue as long as the possession continues, not to exceed 3 months after performance of the labor or furnishing the material. (emphasis supplied)
Section 713.74 might have been applicable to Whitehouse, if Whitehouse had *843 owned the vessel when Ringhaver asserted its lien. However, Ringhaver notified Whitehouse on April 4, 1988 — almost two weeks after Whitehouse sold the boat and delivered it to Brooks. Even if the lien arose in February 1988 before Brooks became the owner, the instant Whitehouse defaulted under its contract to pay Ringhaver, the statute is clear that no lien can be asserted against purchasers without notice. The parties here stipulated that Brooks had no actual notice of Ringhaver’s lien claim when he paid Whitehouse in full for the boat and took delivery.
Section 713.75 is perhaps more applicable to the facts in this ease, but it reaches the same result. It provides:
A person entitled to acquire a lien not in privity with the owner of the personal property shall acquire a lien upon the owner’s personal property as against the owner ... by delivery to the owner of a written notice that the sum stated in the notice.... A lien shall exist from the time of delivery of [the] notice for the amount unpaid on the contract of the owner with the person contracting with the lienor and the delivery of the notice shall also create a personal liability against the owner of the personal property in favor of the lienor giving the notice, but not to a greater extent than the amount then unpaid on the contract between the owner and the person with whom the owner contracted. There shall be no lien upon personal property as against creditors and purchasers without notice except under the circumstances and for the time prescribed in s. 713.74 and for the amount of the debt due to the lienor at the time of the service of the notice provided for by this section, (emphasis supplied)
Under section 713.75, the amount of the lien assertable against the owner is limited to the amounts as yet unpaid by the owner under the contract with the person with whom the owner contracted. In this case, the parties stipulated that when Brooks was notified by Ringhaver about its lien claim on May 6, 1988, Brooks had already paid Whitehouse in full under their contract. In fact, because Whitehouse failed to complete the vessel’s construction, Brooks had claims and setoffs against Whitehouse when the lien was asserted. Thus, no sums would be lienable by Rin-ghaver against Brooks.
Moreover, both sections 713.14 and 713.-75 provide that liens cannot be enforced against purchasers without notice. The facts stipulated in this case put Brooks into this category as a matter of law. He did not receive actual notice of Ringhaver’s lien claim before he paid for the vessel in full and became its owner. Further, there are no other applicable lien recording statutes, or facts in this case which might have charged Brooks with constructive notice of Ringhaver’s lien claim. For the reasons stated herein, the judgment appealed is
AFFIRMED.
DAUKSCH, J., and MILLER, J.D., Associate Judge, concur.

. Section 713.60, Florida Statutes (1987) provides:
713.60 Liens for labor on or for vessels. — In favor of any person performing for himself or others, any labor, or furnishing any materials or supplies for use in the construction of any vessel or watercraft; and in favor of any person performing for himself or others, any labor or service of any kind, on, to or for the use or benefit of a vessel or watercraft, including masters, mates and members of the crew and persons loading or unloading the vessel or putting in or taking out ballast; upon such vessel or watercraft, whether partially or completely constructed and whether launched or on land, her tackle, apparel and furniture.